**Hoang Ngoc CAN, Nguyen Huu To, Van U Duc and Other Citizens of South Vietnam on April 30, 1975, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. 92 Civ. 9196 (PKL).**

United States District Court, S.D. New York.

April 30, 1993.

Mac Truong, New York City, Mac Truong, Frank E. Allen, of counsel, for plaintiffs.

Roger S. Hayes, U.S. Atty. for the S.D. of N.Y., New York City, Aimee B. Wolfson, of counsel, for defendant.

### OPINION AND ORDER

LEISURE, District Judge,

On April 30, 1975, eighteen years ago to the day of the filing of this Opinion and Order, the terrible engines of injustice were visited upon the people of the Republic of South Vietnam. The communist regime of North Vietnam invaded its southern sister-state, which disintegrated and fell under the brutal onslaught of the attack. More than one million citizens of South Vietnam fled the country in the pursuit of freedom outside the territory of their homeland. Additionally, many citizens of South Vietnam were imprisoned by the communist government without cause or justification. It is indisputable that many former citizens suffered at the hands of the invading communist government, whether due to the conditions endured when the government of South Vietnam collapsed or due to the hardship experienced by those people who left their homes in the pursuit of freedom.

This action is not about the adversity endured by the citizens of the Republic of South Vietnam before, during, and after the Spring of 1975. Rather, this action concerns plaintiffs' claims that they are entitled to recover for their own use any assets of the defunct Republic of South Vietnam that may be found in the United States. All such assets have been blocked since 1975 pursuant to the Trading With the Enemy Act ("TWEA" or "the Act") and the Foreign Assets Control Regulations (the "Regulations"). 50 U.S.C.App. §§ 1–44; 31 C.F.R. § 500.101–.901. Plaintiffs seek a preliminary injunction directing that (1) the United States freeze all assets of the former government of South Vietnam held by it or maintained under its control as custodian for plaintiffs, pending resolution of this action; (2) the United States designate plaintiff's counsel as the holder of all blocked accounts and properties; (3) the cost of managing the assets and attorneys fees and costs related to this action be paid from the frozen assets; (4) the communist regime of North Vietnam be declared an enemy of the United States; (5) the "Foreign Assets Control Office" disregard any instructions of the State Bank of Vietnam with regard to the blocked assets; and (6) plaintiffs be acknowledged as the sole and rightful owners of all assets belonging to the Republic of South Vietnam on April 30, 1975. Further, plaintiffs seek an accounting of the assets and the transfer of all title, control, and possession of the assets to plaintiffs.

The United States opposes the motion for a preliminary injunction and additionally cross-moves for an Order dismissing the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The government argues that the United States has not waived its sovereign immunity with respect to the types of claims presented in this action and that the issues to be resolved are nonjusticiable because any resolution of plaintiffs' claims by this Court necessarily would impinge on the President's sole power to recognize foreign governments. For the following reasons, the cross-motion of the United States to dismiss the action for lack of subject matter jurisdiction hereby is granted. Further, the Court has determined that plaintiffs' claims present nonjusticiable political questions that properly may be resolved only by the executive branch. Accordingly the motion of the United States to dismiss this action hereby is granted and plaintiffs' motion for a preliminary injunction must be denied.

## BACKGROUND

### A. *Plaintiffs' Claims*

Plaintiffs' principal claim in this action is that they

> are the legitimate successors-in-interest of the former Republic of South Vietnam and/or the former government of South Vietnam under its various official an/or unofficial names.

Complaint, ¶ 11. Plaintiffs thus assert that they are the rightful owners of all assets owned by the Republic of South Vietnam when it collapsed on April 30, 1975. Also on April 30, 1975, President Ford blocked the payment or other transfer of such assets or the assets of "designated nationals" in accordance with section 5 of TWEA. *See* 31 C.F.R. § 500.201.

Subject matter jurisdiction over this action "is mainly founded on the existence of a Federal question." Complaint, ¶ 3. The complaint suggests that subject matter jurisdiction exists over this action merely because the United States is a party, *see* Complaint, ¶ 3, but also states that the action arises under TWEA and related regulations. Complaint, ¶ 4. Although not pleaded in the complaint, plaintiffs also suggest that subject matter jurisdiction may properly lie pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671 *et seq.,* or because this is a suit to quiet title in property in which the United States has an interest pursuant to 28 U.S.C. §§ 2409, 2409a, and 2410. *See* Plaintiff's Memorandum of Law Supporting Plaintiffs' Order to Show Cause ("Plaintiff's Memo"), at 15–16.

## B. *Statutory Framework*

TWEA gives the President broad powers to seize or block the assets of foreign governments and their nationals and to prohibit all economic transactions with designated foreign countries or "designated nationals," as defined in the Act. *See generally* 50 U.S.C.App. § 1 *et seq.;* 31 C.F.R. § 500.101–.901. South Vietnam became subject to the blocking provisions of the Act at 12:00 p.m., eastern daylight time, on April 30, 1975. 31 C.F.R. § 500.201 (schedule of "designated foreign countries"). As defined in TWEA, a designated national is any designated foreign country, any person or entity who resided in a blocked nation after the effective date of the blocking, or any person using funds on behalf of the government of a blocked nation. 31 C.F.R. § 500.301–.308.

TWEA provides for the seizure or blocking of the assets of enemies of the United States and their allies. When property is seized, all title to the property vests in the United States and the property is placed in the care of the Alien Property Custodian. 50 U.S.C.App. § 6. TWEA permits an action for the return of seized property to be brought against the United States pursuant to section 9(a) of the Act.

Section 5(b) of TWEA permits the President to block or freeze the assets of designated countries or nationals rather than effecting a seizure. Section 5(b) provides, in pertinent part:

> (b)(1) During the time of war [or during any other period of national emergency declared by the President],[1] the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—
>
> (A) investigate, regulate, or prohibit, any transactions in foreign exchange,

transfers of credit between, by, through or to any banking institution ..., and

> (B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to or transactions involving, any property in which any foreign country or any national thereof has an interest. by any person, or with respect to any property, subject to the jurisdiction of the United States....

50 U.S.C.App. § 5(b).[2] When assets are blocked but are not seized, judicial review does not lie under section 9(a) of the Act because that section provides a means "through which eligible persons may seek recovery of property *seized* under the Act." *Cornet Stores v. Morton,* 632 F.2d 96, 98 (9th Cir.1980) (emphasis supplied), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981); 50 U.S.C.App. § 9(a). The assets at issue here have never been seized, although the blocking order has remained in effect for eighteen years. "The blocking of the assets," however, "does not affect the interest, right or title to them which [plaintiffs] may possess." *Tran Qui Than v. Regan,* 658 F.2d 1296, 1301 (9th Cir.1981), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 630 (1982). Although "blocking involves a deprivation of the enjoyment of a property interest...., [t]hat deprivation is temporary ... and is not equivalent to vesting." *Id.,* 658 F.2d at 1304 (finding that the blocking of assets does not constitute a taking).

The Office of Foreign Assets Control ("OFAC"), acting on behalf of the Secretary of the Treasury, has the authority to provide for specific or general licenses or exceptions to a blocking order. 50 U.S.C.App. § 5; 31 C.F.R. § 500.801. Parties seeking a license must apply to OFAC, and OFAC's decision

---

1. Section 5(b) was amended in 1977 to restrict the President's authority only to times of war. Act of Dec. 28, 1977, Pub.L. No. 95–223, § 101(a), 91 Stat. 1625. However, this restriction on the President's power under section 5(b) was prospective and therefore does not affect assets blocked pursuant to President Ford's Order on April 30, 1975. *Id.* at § 101(b). Presi-

dent Ford's order was authorized under the original language of the statute, shown in brackets.

2. The president's power under section 5(b) was delegated to the Secretary of the Treasury, 7 Fed.Reg. 1409 (1942), who redelegated that authority to the Director of the Office of Foreign Assets Control. 32 Fed.Reg. 3472 (1967).

**110**

on any application constitutes final agency action. 31 C.F.R. § 500.803. An applicant dissatisfied with OFAC's disposition of an application for a license may seek judicial review of the decision in accordance with the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.;[3] see also Tran Qui Than, 658 F.2d at 1300–01 (denial of license under 31 C.F.R. § 500.801 subject to review under the APA). Although section 9(a) of the Act permits an action to be brought against the United States to contest a seizure without first challenging the action in an administrative proceeding, TWEA does not provide an independent cause of action for the unblocking of assets. Tran Qui Than, 658 F.2d at 1301. It is undisputed that plaintiffs in the instant case have never applied to OFAC for a license. See Declaration of R. Richard Newcomb, dated March 19, 1993 ("Newcomb Declaration"), ¶ 3.

### DISCUSSION

**I. Sovereign Immunity of the United States**

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued.'" United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Further, a court's subject matter jurisdiction is narrowly defined by the terms of the consent to be sued. Estate of Watson v. Blumenthal, 586 F.2d 925, 932 (2d Cir.1978). Plaintiffs suggest that subject matter jurisdiction may be based on the fact that the United States is a party to this action. Plaintiffs' argument, if accepted by the Court, would abrogate in its entirety the doctrine of sovereign immunity and therefore is rejected without further discussion.

■ Plaintiffs next allege that this case presents a federal question because their claims arise under federal law and that sub-ject matter jurisdiction therefore exists pursuant to 28 U.S.C. § 1331. However, section 1331 does not effect a general waiver of the sovereign immunity of the United States. B.K. Instrument, Inc. v. United States, 715 F.2d 713, 724 (2d Cir.1983) (Friendly, J.); see also Brown v. General Services Admin., 425 U.S. 820, 827 n. 9, 96 S.Ct. 1961, 1965 n. 9, 48 L.Ed.2d 402 (1976); Estate of Watson, 586 F.2d at 930–32. Thus, section 1331 does not constitute an independent waiver of sovereign immunity that gives the Court subject matter jurisdiction over this action.

Plaintiffs further contend that the Court has subject matter jurisdiction over their claims based upon "the Court's inherent power of judicial review." See Plaintiff's Response, at 12 (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). Thus, plaintiffs argue that

the question of jurisdiction of the court is one of judicial power to review the acts of other branches, that which has been established since Marbury v. Madison.

Plaintiff's Response, at 12. Plaintiffs' belief that Marbury gave federal courts the power to hear and decide any and all claims against the other branches of the federal government is decidedly misplaced. Marbury does not act as a waiver of sovereign immunity; rather, the Court is deprived of jurisdiction over the subject matter of the complaint if the United States has not given its consent to be sued with respect to the particular types of claims presented in this action.

**A. Waiver of Sovereign Immunity Under TWEA**

■ Plaintiffs also allege that TWEA provides the Court with subject matter jurisdiction. However, TWEA provides for a cause of action against the United States only when assets have been seized. 50 U.S.C.App. § 9(a); Tran Qui Than, 658 F.2d at 1301. Plaintiffs contend that the blocked assets were seized by the government "when OFAC

---

3. The APA provides that a reviewing court must set aside agency findings and conclusions of law determined to be:

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right....

5 U.S.C. § 706(2).

decided to 'give' it to the Department of Agriculture to use and enjoy without paying or accounting for any interest, in violation of the provisions of the TWEA." *See* Plaintiffs' Response, at 13. In support of their position, plaintiffs cite the Statement of R. Richard Newcomb, Director of OFAC, before the Subcommittees on Asian and Pacific Affairs and International Economic Policy and Trade of the House Committee on Foreign Affairs, dated November 17, 1989 ("Newcomb Statement," attached to the Order to Show Cause as Exhibit A). However, the Newcomb Statement unambiguously indicates that the subject assets are still blocked and that title to those assets has not vested in the United States or any related entity. The Statement notes that certain blocked funds owned by United States entities were licensed and returned to the federal government,

> *except* the blocked obligation of $6.3 million held by the Commodity Credit Corporation ("CCC").... The CCC obligation has not been returned to the U.S. government principally because the underlying Public Law 480 contracts involved provided that title to the commodities had already passed to the former Government of the Republic of Vietnam.... As a technical legal matter, title to the proceeds from the sale of the commodities remains with South Vietnam.

Newcomb Statement, at 7–8 (emphasis supplied). The $6.3 million obligation held by the CCC therefore does not constitute a seizure of the assets of the former government of South Vietnam under the undisputed facts of this case.

■ Plaintiffs next suggest that other assets were seized when OFAC authorized the changing of the parties named on certain accounts. At the request of the State Bank of (North) Vietnam, accounts held in the name of the state bank of South Vietnam were changed to identify the account holder as the State Bank of Vietnam. Newcomb Statement, at 4. Mr. Newcomb made it clear, however, that

> [t]he changes in the names of the account parties and the limited administrative control retained by the account parties are without prejudice to the issue of whether the account parties are entitled to ownership of the funds.

Newcomb Statement, at 4. Moreover, OFAC denied the State Bank of Vietnam's request that the blocked accounts be consolidated into its own blocked accounts, requiring instead that the assets of the former government of South Vietnam continue to be held in separate accounts. Newcomb Statement, at 5. Thus, it is evident that these assets have not been seized by the United States and are still properly described as blocked assets under TWEA. The change in the names of the holders of record of the blocked accounts was merely an administrative action that had no effect on any party's right or claim to the assets.

A party seeking to obtain blocked property must follow the procedure prescribed by TWEA: the party must apply for a license from OFAC and exhaust all available administrative remedies before seeking relief in court. *See* 31 C.F.R. § 500.802. The provisions of the APA then operate as a waiver of sovereign immunity and permit a district court to review OFAC's determination, which is deemed to be a "final agency action.". *See* 31 C.F.R. § 500.803. It is undisputed that plaintiffs have never applied to OFAC for a license or the unblocking of assets. *See* Newcomb Declaration, ¶ 3. Thus, there is no agency action to review and the limited waivers of sovereign immunity effected in TWEA and the APA are not broad enough to provide the Court with subject matter jurisdiction over plaintiffs' claims.

■ Nevertheless, plaintiffs contend that their failure to exhaust available administrative remedies should be excused. Plaintiffs first argue that the complaint:

> is substantially an application for a license. Defense Attorney's motion to dismiss Plaintiffs' Complaint is substantially a denial by the Administration of Plaintiffs' application for license, capable of judicial review.

Plaintiff's Response, at 16. Plaintiffs' suggestion, if accepted by the Court, would totally eviscerate the doctrine of exhaustion of remedies. If plaintiffs could argue that the pursuit of administrative remedies was futile

because the government opposed their claims, the requirement would cease to exist. In any event, plaintiffs' exhaustion of administrative remedies is a jurisdictional requirement in this case, as the Court lacks the authority to hear this action until the prerequisites to a waiver of the sovereign immunity of the United States are fulfilled.

■ Plaintiffs next suggest that they are entitled to proceed directly to court and forego the administrative procedures prescribed by Congress because they seek to prosecute their claims as a class action. Plaintiffs provide no authority for the suggestion that Rule 23 of the Federal Rules of Civil Procedure acts as a waiver of the sovereign immunity of the United States or otherwise exempts plaintiffs from the doctrine of exhaustion of remedies. Further, the licensing scheme designed to effectuate TWEA requires that OFAC consider each applicant and determine that the person has not resided in the blocked country since the date of blocking and that the blocked funds, if released, would not be used to support the blocked nation. 31 C.F.R. § 500.301–.308 Permitting plaintiffs to proceed in this Court solely because they have filed their claims as a class action would usurp OFAC's function in contravention of the clear statutory intent underlying TWEA. It is beyond cavil that the mere designation of a case as a class action cannot operate to bring the action within the subject matter jurisdiction of this Court.

Finally, plaintiffs' failure to seek a license from OFAC before filing the complaint in the instant action precludes a finding that the government's waiver of sovereign immunity in the APA gives the Court subject matter jurisdiction over plaintiffs' claims. The APA waives sovereign immunity and permits re-

view only where there is a "final agency action" rendered by a federal agency. *See* 5 U.S.C. § 704; *Lary v. Republic of Cuba*, 643 F.Supp. 194, 197 (S.D.N.Y.1986), *aff'd* 814 F.2d 653 (2d Cir.1987). Here, there is no final agency action to review.[4]

**B. *Subject Matter Jurisdiction Under the FTCA***

■ Despite their failure to assert a tort claim in the complaint, plaintiffs insist that the government's waiver of sovereign immunity in the FTCA provides the Court with subject matter jurisdiction over this action. However, the FTCA explicitly excepts from its purview any claim related to the administration of the provisions of 50 U.S.C.App. §§ 1–31. 28 U.S.C. § 2680(e). Thus, plaintiffs' argument that the FTCA provides subject matter jurisdiction over this action is wholly without merit.

**C. *Waiver of Sovereign Immunity Pursuant to 28 U.S.C. §§ 2409, 2409a, and 2410***

■ Plaintiffs next contend that the Court has jurisdiction under sections 2409, 2409a, and 2410 of Title 28 because the United States has an interest in the blocked assets of the former government of South Vietnam. Section 2409 authorizes partition actions against the United States where the United States owns an undivided interest in land as a common or joint tenant. Section 2409a permits a party to bring an action against the United States to "quiet title to real property in which the United States claims an interest." Section 2410 authorizes a person to name the United States as a party in certain civil actions affecting real or personal property on which the United States "has or claims a mortgage or lien." Plaintiffs seek to recov-

---

**4.** Plaintiffs inexplicably suggest that 31 C.F.R. § 500.567 provides a basis for subject matter jurisdiction over this action. Section 500.567 provides for the granting of a specific license to the shareholders of certain foreign corporations under particular circumstances:

> Specific licenses may be issued unblocking the net pro rata shares of individuals who are permanent residents of the United States ... in U.S.-located assets of corporations formed under the laws of countries designated in this part....

Section 500.567 provides further requirements that must be met before any license may issue to such shareholders. This section clearly does not apply to the facts of this case because the former government of South Vietnam cannot properly be described as a "corporation" and the plaintiffs herein cannot be deemed to be shareholders of that entity. In any event, TWEA would require that plaintiffs seek a license from OFAC prior to the filing of any suit. Then the Court would be empowered to review OFAC's decision under the APA.

er certain land and buildings that were assets of the government of South Vietnam on April 30, 1975.

The United States does not claim any ownership, mortgage, or lien interest in any of the properties at issue in this case. As discussed *supra*, the blocked assets have not been seized by the United States and title has not vested in the United States despite the fact that any disposition of the assets must be in accordance with TWEA and the regulations related thereto. Plaintiffs rely on a non-legal definition of "interest" to argue that the United State has an interest in these properties because it is interested in how they are used and to whom they are distributed, as a matter of foreign policy. Such an "interest" does not rise to the level of a property interest that can form a sufficient basis for suit under sections 2409, 2409a, or 2410. The status of assets subject to a blocking order was addressed comprehensively by the Ninth Circuit in *Tran Qui Than:*

> We recognize that blocking involves a deprivation of a property interest. That deprivation is temporary, however, and is not equivalent to vesting. Vesting occurs when title to assets is transferred to the government; blocking does not transfer title but rather prohibits temporarily, [sic] transactions involving those assets.

658 F.2d at 1304; *accord Nielsen v. Secretary of Treasury,* 424 F.2d 833, 845 (D.C.Cir. 1970). Moreover, the blocking program does not become a seizure and does not constitute a vesting merely because the program remains in place for a lengthy period of time, even if the blocking persists for multiple decades:

> While international affairs may move at a pace of bewildering rapidity, often negotiation is conducted with persistence and patience at a snail's pace. Negotiation may be deferred while relationships are left to simmer without stirring, in order to strengthen any possible threads of international accord or reconciliation. We have no basis for saying … that blocking is only a name and that the only discernable outcome is unilateral vesting. Even assuming such a conclusion, however, the courts would properly give latitude to Congress in terms of time and substantive determination, to evolve a set of vesting provisions which it deemed reasonable in the light of a broad overview of the relevant circumstances.

*Nielsen,* 424 F.2d at 845; *accord Tran Qui Than,* 658 F.2d at 1304. Plaintiffs, in essence, ask the Court to imply a seizure or a vesting of the assets in the United States. Such an implication does not comport with the statutory framework and is belied by common sense. *See also* Newcomb Statement, at 11–12 (explaining OFAC's opposition to any vesting of blocked assets in the United States and support of continued blocking, which "merely preserves the status quo").

Moreover, permitting this action to proceed under sections 2409, 2409a, or 2410 would require the Court to twist the meanings of those provisions beyond their intended scope. The statutory framework clearly reveals that persons seeking to recover assets blocked pursuant to TWEA must fulfill the prescribed procedural requirements and prerequisites to the bringing of an action in a district court. Sections 2409, 2409a, and 2410 do not properly apply to the claims asserted in this action and therefore do not provide a basis for the Court's assertion of subject matter jurisdiction over plaintiffs' action.

## II. The Political Question Doctrine and the Standing of Foreign Sovereigns and Their Successors to Sue in the Courts of the United States

■ Plaintiffs' claims are based on the theory that they are entitled to recover the assets held by the government of South Vietnam on April 30, 1975 because that government was in fact merely the embodiment of the people of South Vietnam. Plaintiffs explain their theory of personal ownership of and entitlement to the assets of the former government of South Vietnam in the following manner:

> The fact that a political instrumentality of the Plaintiffs (an entity known as the South Vietnamese Government before it collapsed), which had originally managed

the said assets on behalf of the plaintiffs, has been destroyed by its enemy and does not exist any more [sic], does not in any way make Plaintiffs lose the ownership of their assets. The said government was never the true owner of the assets. It was merely a political instrumentality of the Plaintiffs in that it was elected and chosen by the Plaintiffs to represent and act on the Plaintiffs' behalf in the political arena. It was (or at least supposed to be) a government of the people, by the people, and for the people.

Plaintiffs' Memo, at 19–20.

"The law is well established that a foreign government that is not recognized by the United States may not maintain suit in state or federal court." *Republic of Vietnam v. Pfizer, Inc.*, 556 F.2d 892, 894 (8th Cir.1977) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)). "The recognition of foreign governments is a function of the executive branch and is wholly outside the competence of the judiciary." *Republic of Vietnam*, 556 F.2d at 894 (citing *National City Bank v. Republic of China*, 348 U.S. 356, 358, 75 S.Ct. 423, 425–26, 99 L.Ed. 389 (1955)); *see also Guaranty Trust Co.*, 304 U.S. at 137, 58 S.Ct. at 791. Objections to decisions of the executive branch with regard to state succession "as well as to the underlying policy are to be addressed to it and not to the courts." *Id.*, 304 U.S. at 138, 58 S.Ct. at 791.

It is undisputed that "the Republic of Vietnam, both as a state and as a government, ha[s] ceased to exist in. law or fact and the United States ha[s] not recognized any government as the sovereign government in the territory formerly known as South Vietnam." *Republic of Vietnam*, 556 F.2d at 895. It is the position of the United States that issues concerning the ownership of the assets of the former government of South Vietnam is a question of state succession: That government no longer exists, but the United States has not yet recognized any successor to that political entity. *See* Newcomb Statement, at 10–11.

Plaintiffs' definition of themselves as a non-sovereign class directly implicates the political question doctrine.[5] Justice Brennan explained the doctrine and its underlying policies in writing the Opinion of the Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217, 82 S.Ct. at 710. Thus, the political question doctrine is "essentially a function of the separation of powers." *Id.*; *see also Lamont v. Woods*, 948 F.2d 825, 831 (2d Cir.1991). One example of a nonjusticiable political question noted by the Court was the recognition of foreign governments, which "so strongly defies judicial treatment that without executive recognition a foreign state has been called 'a republic of whose

---

**5.** Plaintiffs suggest that

even if Plaintiffs are sovereign, as the defense attorney tried to label them but failed, they can definitely sue in courts by waiving their immunity and accepting the jurisdiction of the court. Axiomatically a sovereign who cannot waive its immunity and exercise its right to sue is no sovereign. By the mere fact that a sovereign sues in [c]ourt, it waives its immunity and submits itself to the court['s] jurisdiction.

Plaintiff's Response, at 24. Plaintiffs confuse the doctrine of sovereign immunity with the princi-

ple, enunciated in *Guaranty Trust Co.*, that the courts of this nation are open to foreign governments only when they are recognized by the executive branch of the federal government. Thus, an unrecognized government has no power to waive the recognition requirement. Further, the inability to sue does not necessarily affect a government's sovereignty: A government that may not sue in the courts of the United States may be a sovereign; it simply is an unrecognized sovereign that is not accorded access to this nation's courts.

existence we know nothing.'" *Baker,* 369 U.S. at 212, 82 S.Ct. at 707 (citations omitted).[6]

Plaintiffs' action implicates fundamental political questions that only the executive branch has the power to resolve under the Constitution. Any resolution of plaintiffs' claims by this Court necessarily would impinge upon the President's sole power and authority to recognize foreign governments and to use the blocked assets of foreign governments as an instrument of foreign policy. *United States v. Pink* teaches that the President's power to recognize foreign governments renders nonjusticiable claims indirectly related to that power. 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942). The Court in *Pink* found that the President's recognition of the Russian Soviet Government was interdependent with the acceptance of the Litvinov Assignment, which provided a method for the settlement of American claims against the Soviet Government. Because these actions were interdependent, the Court held that the property rights defined by the Litvinov Assignment were binding on the courts even if the result is "considered contrary to the moral principles of the forum." *Id.,* 315 U.S. at 206. The Court explained that the President must be afforded wide latitude in performing his foreign policy functions and that his powers are not narrowly circumscribed:

Recognition is not always absolute; it is sometimes conditional. Power to remove such obstacles to full recognition as settlement of claims of our nationals certainly is a modest implied power of the President who is the "sole organ of the federal government in the field of international relations." Effectiveness in handling the delicate problems of foreign relations requires no less. Unless such a power exists, the power of recognition might be thwarted or seriously diluted. No such obstacle can be placed in the way of rehabilitation of relations between this country and another nation, unless the historic conception of the powers and responsibilities of the Presi-

dent in the conduct of foreign affairs is to be drastically revised.

315 U.S. at 229–30, 62 S.Ct. at 565 (citations omitted); *see also Dames & Moore v. Regan,* 453 U.S. 654, 683, 101 S.Ct. 2972, 2988–89, 69 L.Ed.2d 918 (1981) ("The constitutional power of the President extends to the settlement of mutual claims between a foreign government and the United States, at least when it is incident to the recognition of that government") (quoting *Ozanic v. United States,* 188 F.2d 228, 331 (2d Cir.1951) (L. Hand, J.)).

In this case, it is clear that any determination as to the ownership of the assets of the former government of South Vietnam is necessarily interdependent with the political question concerning the recognition of foreign governments and in particular a successor to that government. The purpose of the blocking authority provided pursuant to TWEA is threefold:

(1) to prevent designated countries from acquiring dollars; (2) to provide a fund from which United States citizens could be compensated for injury occasioned them by designated countries; (3) and *to use the blocked funds as a negotiating tool* with the designated country.

*Tran Qui Than,* 658 F.2d at 1305 (emphasis supplied). Further, Congress has expressed its approval of this policy and support for the use of the assets of the former government of South Vietnam as a bargaining chip in negotiations with the communist government currently in control. *See* H.R. 96–915, *reported in* 1980 U.S.C.C.A.N. 7328, 7331 ("It is the intent and expectation of the committee that Vietnamese assets will remain frozen pending settlement of U.S. claims against Vietnam.").

Plaintiffs recognize that "some of the aspects of this action are political" and that one potentially political question is whether the communist government of North Vietnam should be recognized as the new legitimate government of South Vietnam. *See* Affidavit of Dr. Hoang Ngoc Can, dated February 15, 1993, ¶ 27. However, Plaintiffs mistakenly suggest that this issue has been decided by

---

**6.** The President's power to recognize foreign governments is derived from Article II, Section 3 of the United States Constitution, which provides in

pertinent part that the President "shall receive Ambassadors and other public Ministers."

the United States government in the negative and that all that the Court must do is interpret that decision. *Id.* Plaintiffs' contention is erroneous. While the United States has not recognized a successor to date, it is possible that the President will eventually recognize some party or organization as the successor to the former government of South Vietnam. Indeed, plaintiffs' papers in support of their request for a preliminary injunction recognize that "the new U.S. Administration may very soon establish diplomatic relations with the Hanoi regime." *See* Affidavit of Mac Truong, Esq., dated February 18, 1993, ¶ 6 & Ex. D. Thus, the political question implicated by plaintiffs' claims for relief currently may be under consideration by the executive branch.

It is evident that any determination as to the ownership of the assets of the former government of South Vietnam necessarily is intertwined with negotiations between the executive branch and the current government of Vietnam concerning recognition and succession. Alternatively, it would be within the President's power to declare a hypothetical "Free Vietnam in Exile" to be the successor to the government of South Vietnam and order the unblocking and distribution of assets to that new entity. Plaintiffs' theory, though creatively crafted, cannot avoid the bar of the political question doctrine. Although plaintiffs' political theory comports with the theoretical definition of a "republic," the President's power to recognize governments and engage in related negotiations cannot be burdened by a theoretical construct.

Mindful of the admonition that "it is error to suppose that every case or controversy that touches foreign relations lies beyond judicial cognizance," *Baker*, 369 U.S. at 211, 82 S.Ct. at 707, the Court has carefully considered the particular questions posed in this action and the possibility that resolution of such issues might impinge upon the President's power to recognize foreign governments. *See also Lamont*, 948 F.2d at 832; *Planned Parenthood Fed'n of Am., Inc. v. Agency for Int'l Dev.*, 838 F.2d 649, 655 (2d Cir.1988), *cert. denied*, — U.S. —, 111 S.Ct. 2257, 114 L.Ed.2d 709 (1991). This

action clearly is not one that merely touches upon issues of foreign relations. Rather, the power of the President to recognize governments is directly implicated by the claims asserted herein. In this case, the Court must defer to the President's power in the realm of foreign affairs and, as an alternative basis for the dismissal of plaintiffs' complaint, decline to hear this action because it presents nonjusticiable political questions.

### CONCLUSION

For the foregoing reasons, the motion of the United States of America for an Order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction hereby is granted. Further, the Court finds that plaintiffs' claims present nonjusticiable political questions that may not properly be decided by the judicial branch. Accordingly, the Court is not permitted to consider plaintiffs' motion for a preliminary injunction. The action is dismissed.

**SO ORDERED**