Hoang Ngoc CAN; Nguyen Huu To; Van U Duc, and other citizens of South Vietnam on April 30, 1975, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 480, Docket 93–6134.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1993.

Decided Jan. 13, 1994.

---

Mac Truong, New York City, for plaintiffs-appellants.

Aimee B. Wolfson, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Ping C. Moy, Asst. U.S. Atty., on the brief), for defendant-appellee.

Before: NEWMAN, Chief Judge and KEARSE, Circuit Judge, POLLAK,* District Judge.

LOUIS H. POLLAK, District Judge:

The appellants in this case are a self-styled class of all persons who were citizens of the Republic of South Vietnam on April 30, 1975, when that government collapsed and was taken over by North Vietnam. The class filed suit in the Southern District of New York seeking a preliminary injunction directing that (1) the United States freeze all assets under its control that belonged to the former South Vietnam; (2) plaintiffs' counsel be designated the holder of all such assets; (3) costs of managing the assets and of maintaining this legal action be paid from the frozen assets; (4) the communist North Vietnamese regime be declared an enemy of the United States; (5) the United States disregard any instructions from the current State Bank of Vietnam regarding those assets; and (6) plaintiffs be declared the sole and rightful owners of the frozen assets.

Upon the motion of the United States under Fed.R.Civ.Proc. 12(b)(1) and 12(b)(6), the district court dismissed the claim for lack of subject matter jurisdiction. The district judge ruled that (1) the United States has not waived its sovereign immunity to suit in this matter, (2) the plaintiffs have failed to exhaust administrative remedies as required for judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and (3) the matter presents non-justiciable political questions. 820 F.Supp. 106.

*Appellants' claims*

At root, appellants' action consists of two distinct, but related, claims. First, appellants argue that "[t]he true question before the court is one of title to the property (blocked or not, personal and real) of the former South Vietnamese Government." Appellants' Br. at 19. Accordingly, appellants seek to be named successors in interest to the assets of the former Republic of South Vietnam now held by the United States. Second, appellants ask the court to order the

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

United States to place those assets under their control, as "it is not in Appellants' best interest to have the [United States] hold Appellants' monies." Appellants' Br. at 8.

■ Appellants seek relief from the district court's rulings on several grounds, some addressed by the district judge and others raised for the first time on appeal. They devote most of their brief to arguing that the district court has subject matter jurisdiction to decide whether the funds should be unblocked and released to the plaintiff class. It is unnecessary for us to address most of the arguments raised. Because we find that the threshold determination of title to the blocked assets would require resolution of issues related to state succession, we hold that appellants' claims hinge upon a question constitutionally committed to the executive branch of the United States government—a question that lies beyond this court's purview. We therefore affirm the judgment of the district court on political-question grounds, and do not reach appellants' challenges to the district court's careful exposition of its conclusion that it lacked subject-matter jurisdiction.[1]

*Discussion:*

■ When the Republic of South Vietnam fell to the North Vietnamese on April 30, 1975, the United States immediately froze the assets of the fallen republic pursuant to the Trading with the Enemy Act ("TWEA"), 50 U.S.C.App. §§ 1–44, and the Foreign Asset Control Regulations, 31 C.F.R. §§ 500.-101–901.[2] Title to those assets appears from the record to have been in the names of several official institutions, including the Republic of South Vietnam and the National Bank of Vietnam. District Court Op. at 11. Appellants contend that, as former citizens of South Vietnam, they rightfully succeed to title over the assets of their defunct republic.

Appellants base their argument on a political theory derived from a simple definition of "republic". They begin by stating that South Vietnam had a "republican form of government", in which sovereign power belonged to "the people and/or all the citizens" of the nation. Appellants' Br. at 3. The populace exercised this power "by electing their political representatives who formed the Government of South Vietnam with a constitutional and legal purpose of serving the people of South Vietnam." *Id.* Once the political instrumentality collapsed, it is argued, any assets belonging to that instrumentality reverted to the sovereign people. *Id.* at 30. Appellants argue that the republic was merely an artificial entity for the people, who were the "owners, employers, principals, masters and/or electors of the said Government." *Id.* They reason that because the source of the republic's sovereign power (its former citizens) remains even after its artificial representative institution (the Government of South Vietnam) disappeared, the latter's assets must by definition belong to the former. *Id.* Appellants find their theory so clear they sanguinely declare that the problem of title does not truly exist. *Id.* at 31.

Even if one assumes appellants' broadbrush definition of "republic" to be logically irrefutable, the determination of title is still beyond judicial competence. The federal courts cannot decide cases on the basis of political theories that incorporate no statutory, constitutional or common-law basis. The

1. We appreciate that in most instances the question whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider. But justiciability is also a "threshold" question. *See e.g. United States v. Sperry Corp.,* 493 U.S. 52, 66, 110 S.Ct. 387, 397, 107 L.Ed.2d 290 (1989) (declining to address merits of an Origination Clause claim before deciding "the threshold question of justiciability"). And where, as appears to be true here, justiciability may be a less knotty question than jurisdiction, we think it not inappropriate to begin by examining that question. *Cf. Bi v. Union Carbide Chemicals and Plastics Co.,* 984 F.2d 582 (2d Cir.1993) (appeal rejected on consideration of standing, in advance of consideration of subject-matter jurisdiction), *cert. denied,* —— U.S. ——, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993); *Browning–Ferris Industries of South Jersey, Inc. v. Muszynski,* 899 F.2d 151 (2d Cir.1990) (appeal rejected on consideration of the merits, in advance of consideration of subject-matter jurisdiction).

2. We do not reach the question of whether, for purposes of TWEA, 50 U.S.C.App. § 9(a), the United States "blocked" the assets in question or "seized" them. We use the term "froze" generically.

courts have no standards for judging a claim of succession to a former sovereign, even where that succession is only to property rather than to government power. The recognition of any rights of succession to a foreign sovereign's power or property is in the first instance constitutionally committed to the executive branch of government, not to the judiciary. For the reasons discussed below, we find the question of whether to recognize such former citizens, or the current Hanoi regime, or indeed any other possible claimant, as the rightful owner of South Vietnamese assets to be clearly political.

■ The political question doctrine must be cautiously invoked, and the law is clear that the fact that a case touches on foreign affairs does not, without more, imply that the case involves a political question. *Planned Parenthood Fed'n of America, Inc. v. Agency for Int'l Development*, 838 F.2d 649, 655 (2nd Cir.1988). Factors that do weigh in favor of a finding of non-justiciability on political question grounds were summarized in *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), in the following terms:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Appellants' claim involves virtually every one of the factors mentioned in *Baker v. Carr*.

■ The President's power to recognize foreign governments is implicit in Sections 2 and 3 of Article II of the United States Constitution, which respectively grant executive authority to appoint ambassadors to foreign nations and to receive ambassadors and public ministers from foreign nations. It is firmly established that official recognition of a foreign sovereign is solely for the President to determine, and "is outside the competence" of courts. *National City Bank v. Republic of China*, 348 U.S. 356, 358, 75 S.Ct. 423, 425, 99 L.Ed. 389 (1955); *accord, Baker*, 369 U.S. at 212, 82 S.Ct. at 707.

Appellants argue that they are not seeking recognition as a sovereign, but simply as successor in interest to the property of their former government. This distinction is without effect. Any resolution of title in appellants' favor would prejudice other claimants, including any government the President might choose to recognize as sovereign successor to the Republic of South Vietnam. There is evidence that such competing claims to the assets in question exist: the current Hanoi regime has requested that frozen accounts in the name of the state bank of South Vietnam be placed in the name of the current state bank of Vietnam. While the United States has granted that request without prejudice to the ultimate question of title, it has refused Hanoi's request to combine the accounts. 820 F.Supp. at 111. The existence of competing claims demonstrates that adjudication of appellants' claims is intertwined with sovereign recognition *vel non* of the current Hanoi regime which, perhaps upon a different theory, also claims an interest in the assets.

Were a court to grant appellants the relief they seek, it would not only decide a question of sovereign succession, but it would interfere with executive foreign policy prerogatives more generally. In particular, judicial determination of title would interfere with the President's use of the assets as a bargaining chip in negotiations with the current Hanoi regime. Several courts have held that such a consideration warrants a finding of non-justiciability. In *Tran Qui Than v. Regan*, 658 F.2d 1296 (9th Cir.1981), *cert. denied* 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 630 (1982), the Ninth Circuit addressed a claim for unblocking of assets belonging to a private South Vietnamese bank. In denying the claim, the court found that a primary purpose of TWEA's blocking provisions was "to use the blocked funds as a negotiating

tool with the designated country." *Id.* at 1305; *see also Richardson v. Simon,* 560 F.2d 500, 505 (2nd Cir.1977) ("major purpose" of analogous statute was "to use the blocked funds for negotiation with the Cuban government").

Appellants' claim necessarily implicates the President's ability to use South Vietnamese assets to negotiate with the current Hanoi regime or to settle other claims against those assets. Such negotiations may be critical to a presidential decision whether, and on what terms, to recognize the regime that now rules Vietnam. By long-standing precedent, questions affecting the President's power to settle claims to frozen assets in the process of recognizing sovereignty are non-justiciable. *United States v. Pink,* 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942) ("modest implied power of the President", *id.* at 229, 62 S.Ct. at 565, to settle claims as part of rehabilitating relations with another country may bind court even to property-rights determinations which court considers "contrary to moral principles of the forum", *id.* at 206, 62 S.Ct. 552). The President's use of frozen assets for such purposes has been ruled constitutional. *See Dames & Moore v. Regan,* 453 U.S. 654, 683, 101 S.Ct. 2972, 2988, 69 L.Ed.2d 918 (1981) (upholding executive power to settle mutual claims between United States—including its nationals—and foreign governments especially when incident to recognition of a foreign government).

The potential use of blocked South Vietnamese assets in negotiations with the current government in Hanoi is not speculative or fanciful. Appellants conceded in the district court that their litigation raises the political question of whether the current regime should be recognized as the rightful successor to the fallen republican government. 820 F.Supp. at 115. Appellants also acknowledge that negotiations may be under way already to "establish diplomatic relation[s] with the Hanoi regime." Affidavit of Mac Truong, Esq. at ¶ 6.

There is no question that a judicial decision on who has title to the frozen assets would affect the executive's use of those assets in present or contemplated negotiations with Hanoi. Such a decision would (1) involve "an initial policy determination of a kind clearly for nonjudicial discretion", (2) "express[ ] lack of the respect due coordinate branches of government", and (3) lead to the "potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker,* 369 U.S. at 217, 82 S.Ct. at 710. We therefore find appellants' claim to present a non-justiciable political question.[3]

Our decision does not leave appellants without a remedial course. That course simply does not at this stage lie in the federal courts. With respect to state succession, "[o]bjections to its determination as well as to the underlying policy are to be addressed to [the political branch of government] and not to the courts." *Guaranty Trust Co. v. United States,* 304 U.S. 126, 137–38, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938). Congress has provided a mechanism for bringing complaints regarding frozen foreign assets to the executive branch under TWEA, 50 U.S.C.App. § 9(a):

> [a]ny person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him ... may file with the said custodian a notice of his claim under oath ... and the President, if application is made therefor by the claimant, may order the payment ... to said

---

3. Appellants offer an alternative theory of entitlement to the frozen assets that does not depend on a determination of succession. They argue that the former South Vietnamese government never "owned" the assets in question but, in keeping with its republican principles, merely acted as a sort of trustee that controlled and used the assets for the benefit of the actual owners, the citizens of South Vietnam. Appellants' Br. at 34. Under this theory, appellants argue that they need no recognition as successor because they were the "first and direct" owners of the assets. *Id.* The implication is that this case does not present a political question. As we have just discussed, however, even if succession is not an issue, appellants' claim presents a political question by virtue of demanding interference with the President's use of the assets in negotiations with the current Vietnamese regime. Accordingly, appellants' alternative argument would not, if accepted, lead us to a different result.

claimant of the money or other property ... to which the President shall determine such claimant is entitled.

TWEA further provides for jurisdiction in the federal courts to consider the claim if the Alien Property Custodian (acting for the President) has not acted within sixty days. If the Custodian does act, the federal courts have jurisdiction to consider the decision within the well-settled parameters for review of administrative decisions under the APA. *See* 31 C.F.R. 500.803. To be sure, an administrative decision adverse to appellants' claim might, depending on the grounds of decision, be shielded from judicial review by the political question doctrine. However, it is uncontroverted that appellants did not even seek an administrative remedy prior to bringing the case at bar in the federal district court. That appellant has since received a final agency determination is irrelevant to our review of this case.[4]

*Conclusion:*

For the foregoing reasons, we find appellants' claim to be non-justiciable. The determination of title to the assets of the former South Vietnam is inextricably intertwined with the question of state succession and sovereignty. Although appellants only claim to be successors in interest, not sovereign successors, to their fallen government, the settlement of claims to those assets clearly affects executive actions towards the current Hanoi regime, and involves decisions constitutionally committed to the executive branch.

Accordingly, the judgment of the United States District Court for the Southern District of New York is *affirmed.*

---

4. Appellants informed the court at oral argument that review of the Custodian's denial of a license for the blocked assets is pending in the district court.