**LORD DAY & LORD, Barrett Smith, Plaintiffs,**

v.

**THE SOCIALIST REPUBLIC OF VIETNAM, Swiss Reinsurance Company, Assurance Generales de France, and Groupe des Mutuelles Alsaciennes Defendants.**

**No. 96 Civ. 5755(DAB).**

United States District Court, S.D. New York.

March 27, 2001.

552

Morgan, Lewis & Bockius LLP, New York City, Eugene F. Bannigan, Jennifer Mangino, for Plaintiff.

White & Case, Washington, DC, Christopher M. Curran, Francis A. Vasquez, Jr., Peter J. Carney for Defendant the Socialist Republic of Vietnam.

Swiss Re America Holding Corporation, New York City, Patrick J. O'Brien, for Defendants the Swiss Reinsurance Company, Assurance Generales de France Iart, and Groupe des Mutuelles Alsaciennes.

## OPINION

BATTS, District Judge.

Plaintiff Lord Day & Lord ("Lord Day"), a law firm in liquidation, brought this interpleader action to determine the entitlement of funds currently held in the possession of this Court. The Socialist Republic of Vietnam ("Vietnam"), Swiss Reinsurance Company, Assurance Generales de France, and Groupe des Mutuelles Alsaciennes (collectively "Reinsurers") have all claimed such entitlement. Defendant Vietnam moves to dismiss the Reinsurers' Cross–Complaint for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1); (b)(2); and (c). For the reasons set forth below, Defendant Vietnam's motion is GRANTED in its entirety.

## I. BACKGROUND

### A. Factual Background

On December 6, 1970, a cargo of rice owned by the, then, Republic of Vietnam ("former Republic") was lost during overseas transport when the ship carrying the cargo sustained a collision in the Panama Canal. (Reinsurers' Compl. ¶¶ 18, 19.) The cargo was insured under a policy issued by Societe Vietnamenne D'Assurances et de Reassurances ("SOVAR"), a Vietnamese insurance corporation. (Id. ¶ 6.) Pursuant to the terms of its insurance agreement, SOVAR reimbursed the former Republic and Tong Cuoc Tiep Te, the then "General Supply Agency" of the former Republic, its insured, for the full value of the loss. (Id. ¶¶ 18–19.) SOVAR obtained an assignment dated December 14, 1971 from its insured for all rights against third parties responsible for the loss. (Id. ¶ 19; App. Mem. Opp., Ex. B (subrogation agreement)).[1] In turn, SOVAR was indemnified by the Reinsurers for a portion of the total cargo loss. (Reinsurers' Compl. ¶ 21.)

Under Plaintiff Lord Day's legal representation, SOVAR and the former Republic commenced a subrogation action in 1973 seeking recovery for the lost rice cargo against parties allegedly responsible for the loss. (Reinsurers' Compl. ¶ 20; Interpleader Compl. ¶ 4.[2]) The action proceeded in the name of the Republic of Vietnam and Tong Cuoc Tiep Te (the country's general supply agency). See In re: Chinese Maritime Trust, Ltd., 71 Civ. 161(RLC) (S.D.N.Y. Mar. 24, 1975) (Final Interlocutory Consent Judgment).[3] This action resulted in a settlement in 1975,

---

**1.** The Court may consider the subrogation contract as it is incorporated by reference in the Reinsurers' Complaint at paragraph 19. See Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.") (internal citations omitted).

**2.** Lord Day alleges its clients were both the former Republic and SOVAR. The Reinsurers make no allegation as to whether the former Republic was also a client of Lord Day. Nevertheless, the Reinsurers admit this

fact in their answer. (Reinsurers' Answer to Interpleader Compl. at 1.) Vietnam has no knowledge sufficient to admit or deny this fact. (Vietnam Answer to Interpleader Compl. ¶ 4.) Consequently, the Court incorporates this fact as both a reasonable inference and otherwise admitted.

**3.** In response to a request from this Court, Plaintiff Lord Day and Defendant Vietnam produced additional discovery materials concerning the filing of the prior action, issuance of the settlement check, application for a Foreign Assets Control License, and opening of the blocked account. The Court may look to this additional materials in determining the existence of jurisdiction over this matter. See

where the former Republic and Tong Cuoc Tiep Te were to obtain $548,364.56 from the Panama Canal Company, after payment of sums due other parties. (Reinsurers' Compl. ¶ 20).

On April 30, 1975, shortly after the settlement check was issued from the Panama Canal Company to Plaintiff Lord Day, Saigon fell to the armies of the Socialist Republic of Vietnam, and the United States subsequently banned all transfer of funds to the Vietnamese government and Vietnamese nationals. (Interpleader Compl. ¶ 6.[4]) See also Trading With the Enemy Act, 40 Fed.Reg. §§ 19202, 19203 (1973) ("TWEA"); 31 C.F.R. § 500.201(a)(1), (d). The settlement check was issued "Pay to the Order of: Lord, Day & Lord, attorneys for Republic of Vietnam & Tong Cuoc Tiep Te / General Supply Agency." (Court Ex. 1.)

Prevented from transferring the settlement check to its Vietnamese clients, Plaintiff sought and was issued a License by the Federal Foreign Assets Control agency permitting placement of the funds into a blocked account, pursuant to the Trading With the Enemy Act. See Court Ex. 2 (Application for License). See also In re: Chinese Maritime Trust, Ltd., 71 Civ. 161(RLC) (S.D.N.Y. Mar. 1976) (Order) (directing Lord, Day & Lord to place balance of the settlement funds "into a blocked account in a domestic bank in the name of the Republic of Viet–Nam and Tong Cuoc Tiep Te. The bank must acknowledge establishment of the account to the Office of Foreign Assets Control giving details.").

Plaintiff applied for a License in its role as "attorneys for Vietnam Assurance and Reassurance Co.," i.e. SOVAR. Court Ex. 2 at 1. In its application, Plaintiff listed SOVAR, rather than the former Republic, as a "present claimant" to the funds. Id. at 5. In its Complaint, Plaintiff explains that, although the case was brought in the name of Vietnam and Tong Cuoc Tiep Te and the Consent Judgment directed payment to Vietnam and Tong Cuoc Tiep Te, "Lord Day had planned to transfer the settlement funds to SOVAR because upon information and belief, SOVAR was subrogated to all rights of the Republic of Vietnam."[5] (Interpleader Compl. ¶ 5.)

---

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). *See also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir.2000) (permitting judicial notice of a filed complaint as a public record).

4. All citations to the Interpleader Complaint are admitted in the Reinsurers' Answer. Vietnam has either admitted or denied sufficient knowledge to admit or deny each citation to the Interpleader Complaint. As the nonmoving party has admitted all facts and as each is a reasonable inference under the circumstances, the Court incorporates some facts arising from the Interpleader Complaint into the facts herein. (Reinsurer Answer to Interpleader Complaint; Vietnam Answer to Interpleader Complaint.)

5. The Court notes that insurers often seek to bring suit in the name of their insured in order to avoid alleged antipathy by jurors against insurance companies. 6A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1546, at 354 (2000). Under New York law, an insurer may bring suit in the name of the insured where a subrogation agreement has been executed. NY CPLR § 1004. *See, e.g., Leinoff, Inc. v. 208 West 29th Street Assoc.*, 243 A.D.2d 418, 663 N.Y.S.2d 554, (1st Dep't 1997) (action filed by insurer in name of insured). However, under federal law, generally only the party in interest may file suit in its name. *See* Fed R. Civ. P. 17(a). *See generally* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1546. Thus, if an insurer has compensated an insured for the entire loss, the insurer becomes the real party in interest and must sue in its name. *Brocklesby Transport v. Eastern States Escort Services*, 904 F.2d 131 (2d Cir.1990) However, if the insured has not paid the entire loss, for example when the insured must pay a deductible, both parties are parties in interest and either may sue in its own name. *See id. See also Prudential Lines, Inc. v. General Tire Int'l Co.*, 74 F.R.D. 474 (S.D.N.Y.1977) (in a factually similar

In the License application, Plaintiff stated that it sought the license in order collect the unpaid judgment and for the purpose of making disbursements to attorneys related to the settlement and "to such other persons having an interest in the balance as may lawfully be paid." (Court Ex. 2 at 4.) Although Plaintiffs acknowledged in the license application that "It is our understanding ... that there are other co-insurers and re-insurers who may be entitled to a share of the proceeds," no party claims to have sought payment from the account while the assets were frozen. *Id.* at 5.

Upon issuance of the License, Plaintiff deposited the funds in the name of the Republic of Vietnam and Tong Cuoc Tiep Te in an interest-bearing account with First National City Bank in New York. (Interpleader Compl. ¶ 8; Court Ex. 3 (Ltr. dated May 6, 1976 from First National City Bank acknowledging opening of blocked account).) Since the initial bank deposit by Plaintiff, the settlement funds have accrued interest and are now valued at approximately $2.8 million.

Effective March 6, 1995, the United States lifted the ban, thus allowing the settlement funds deposited by Plaintiff to be finally transferred. (Interpleader Compl. ¶ 10.) However, following the fall of Saigon, SOVAR had been effectively dissolved and nationalized in April 1975 by Vietnam, who discontinued its operations. (Reinsurers' Compl. ¶ 24.) Uncertain how to proceed, Plaintiff filed the instant Interpleader action.

**B. Procedural Background**

Plaintiff is a New York law firm currently in liquidation. (Interpleader Compl. ¶ 11.) Plaintiff brought this interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure naming the Socialist Republic of Vietnam (the current government of Vietnam, hereinafter, "Vietnam"), and three foreign corporations believed to be former shareholders of SOVAR: Swiss Reinsurance Company ("Swiss Re"), Assurances Generales de France, and Groupe des Mutuelles Alsaciennes ("the Reinsurers"). (*Id.* ¶¶ 12–19.)

Plaintiff Lord Day sought (1) that each of the Defendants interplead and settle

---

case, the court approved a ship owner's suit in its name although the ship's insurer had fully compensated for the loss less a deductible); *Brocklesby Transport v. Eastern States Escort Services*, No. 86 Civ. 9270(JFK), 1990 WL 115718 (S.D.N.Y. Aug.6, 1990) (same) (citing *General Tire*). Further, where a state law of the forum grants a substantive right to proceed in the insured's name, as is the case here, it may so proceed where choice of law rules dictate. *See generally*, 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1544, at 345 (applying rule in diversity jurisdiction actions). The conflict created by Fed.R.Civ.P. 17(a) and the varying treatment of insurance plaintiffs it demands, has prompted some to argue for its abolishment. *See, e.g.,* June F. Entman, *More Reasons for Abolishing Federal Rule of Civil Procedure 17(a): The Problem of the Proper Plaintiff and Insurance Subrogation*, 68 *NCLR* 893 (1990).

For purposes of the instant motion, the above discussion is meant merely to clarify the context of the 1973 action. Thus, on a motion to dismiss, where the Court must make all reasonable inferences in favor of the plaintiff, *see Nettis v. Levitt*, 241 F.3d 186 (2d Cir.2001), it is reasonable to conclude that SOVAR was the party in interest, as alleged by both Lord Day and the Reinsurers and that Lord Day was acting as SOVAR's agent when it received the settlement check from the Panama Canal Company. The Court draws this conclusion notwithstanding the fact that the check was made out to Vietnam and SOVAR was not referenced in any of Judge Carter's Orders now before the Court. *See Liberty Mut. Ins. Co. v. Tel–Mor Garage Corp.*, 92 F.Supp. 445, 446 (S.D.N.Y.1950) ("the allegation of payment to the assureds and consequent subrogation to their rights must be accepted as true on this motion [to dismiss].").

among themselves their respective rights to the funds at issue; (2) enjoinment and restraint from Defendants making any claim against Plaintiff to turn over the funds and prosecuting any action for the recovery of the funds; (3) discharge from all liability in transfer and maintenance of the funds; and (4) fees and attorneys' costs.

Following a hearing to show cause in interpleader conducted on November 13, 1996, this Court granted Plaintiff relief on each of its requests. The Court also ordered Plaintiff to deposit the funds with the Clerk of this Court.

The Reinsurers answered the Complaint and appeared as parties of interest with respect to the funds on November 6, 1996. Upon resolution of outstanding service issues, Vietnam filed its Answer on May 28, 1997. Vietnam's Answer to Plaintiff's Interpleader Complaint asserts its right to the funds pursuant to an Executive Agreement and also asserts several affirmative defenses, including its right to immunity as a foreign sovereign under the Foreign Sovereign Immunities Act. (Vietnam's Answer ¶ 2.)

The Reinsurers also filed a Cross–Complaint asserting entitlement to the funds. According to the Reinsurers, prior to SOVAR's dissolution and nationalization, the Reinsurers had an agreement with SOVAR to provide indemnity reinsurance covering a portion of the rice cargo loss, and also held approximately 30 percent of common stock in the corporation. (Id. ¶¶ 17, 25.) The Reinsurers claim ownership of the funds by their status as reinsurers and shareholders before and during SOVAR's dissolution and nationalization. In addition, Swiss Re brings a separate claim for expropriation.

Vietnam filed the instant motion to dismiss the Reinsurers' Cross–Complaint pursuant to Federal Rules of Civil Procedure 12(b) and (c) on various grounds, including Vietnam's asserted right to the funds as a matter of law pursuant to an Executive Agreement, lack of jurisdiction under the Federal Sovereign Immunities Act and the statute of limitations.

## II. DISCUSSION

■ Interpleader actions generally proceed in two stages. First, the Court determines whether the plaintiff is entitled to the relief sought, including discharge. *Pennsylvania Ins. Co. v. Long Island Marine Supply Corp.*, 229 F.Supp. 186, 188 (S.D.N.Y.1964). Second, the Court adjudicates the adverse claims of the interpleaded defendants. *Id.*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)). Further, a motion to dismiss may be granted only if, taking as true the allegations pleaded in the complaint and making all reasonable inferences in favor of the plaintiff, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999)) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A. Jurisdiction

■ The Foreign Sovereign Immunities Act ("FSIA") is the exclusive basis for federal subject matter and personal jurisdiction in suits involving foreign states. 28

U.S.C. §§ 1330, 1332(a)(2)-(4), 1441(d), 1602–1611; *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 484, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991). Sovereign entities are entitled to immunity from suit and federal courts lack jurisdiction unless a statutory exception applies. *Verlinden,* 461 U.S. at 493–94, 103 S.Ct. 1962.

In its answer to the Interpleader Complaint, Vietnam waived its immunity agreeing to appear in response to Plaintiff's interpleader action for the sole purpose of asserting its claim to the disputed funds. (Vietnam's Answer ¶ 2). However, Vietnam explicitly reserved its rights as a foreign sovereign immune from jurisdiction in connection with any other claims. (Vietnam's Answer ¶ 2). Vietnam claims immunity from all other claims to the funds because, it argues, any such claims require the court to consider alleged contractual relations between Vietnam and the Reinsurers.[6] Effectively, Vietnam seeks to grant this Court jurisdiction solely for the purpose of awarding it the funds. This, Vietnam cannot do.

1. *Counterclaim*

■ The FSIA provides a counterclaim exception, which states:

> In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim ...
>
> (b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state, ...

28 U.S.C. § 1607. Recently, the Second Circuit defined this "transaction or occurrence" liberally as any claim sharing a "logical relationship" with the claim of the foreign state. *Cabiri v. Gov't of Republic of Ghana,* 165 F.3d 193, 197 (2d Cir.), *cert. denied,* 527 U.S. 1022, 119 S.Ct. 2368, 144 L.Ed.2d 772 (1999). The court's approach "looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (permitting counterclaims sharing the same "core issue" as those concerning the foreign state's eviction proceeding).

The procedural stance of this case is not identical but permits analogous application of this exception. Here, Vietnam has neither brought the action nor intervened, but rather, it has appeared to pursue its claim in interpleader. The Reinsurers are co-defendants and have thus filed cross-claims, rather than counterclaims, against Vietnam. Nevertheless, the parties' interests are analogous making the application of the counterclaim exception appropriate.

Only the Reinsurers' claim for breach of contract shares any arguable "core issue" with Vietnam's claim. Both claims arise out of the 1970 ship accident and both parties claim entitlement to the settlement funds pursuant to contract rights arising prior to the 1973 action. The remaining claims for dissolution and expropriation do not share common factual or legal questions. Both the dissolution and expropriation claims arise out of the alleged dissolution and nationalization of SOVAR in 1975,

---

**6.** As Vietnam clarifies in its memorandum, the country has not waived immunity as to any of the Reinsurers' claims to the funds as
 None of the claims asserts a direct right to the Funds. Rather, they assert rights against Vietnam through SOVAR, who the Insurer Claimants allege is the rightful owner of the Funds. Vietnam, however, is immune from jurisdiction and suit in connection with these claims under the FSIA. Mem. Law. Support at 13.

which occurred in Vietnam and was unrelated to the previous Panama Canal accident. There is no factual connection to Vietnam's claim of title other than the mere fact that alleged former funds of SOVAR's are located in this district.

### 2. *Waiver*

■ Even if the counterclaim exception was inapplicable here, Vietnam has also waived its immunity to the extent necessary for the Court to determine title to the funds in its possession. Under the FSIA, the waiver exception permits federal courts to assert jurisdiction over a foreign sovereign that waives its immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1); *Cargill Int'l S.A. v. M/T PAVEL DYBENKO*, 991 F.2d 1012, 1017 (2d Cir.1993). Courts are nearly unanimous in construing the implied waiver exception narrowly. *Shapiro*, 930 F.2d at 1017 (collecting cases). However, the Second Circuit has held that district courts have discretion in determining whether the conduct of a party constitutes an implicit waiver of foreign sovereign immunity "in light of the circumstances of a particular case." *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d Cir.1984).

The appropriate extent of Vietnam's implied waiver here is also impacted by the Court's ability to exercise *in rem* jurisdiction as it is in possession of the funds at issue. *See* 28 U.S.C. § 1654. The *in rem* statute permits the Court to determine claims of ownership to property in its possession but does not provide a means for parties to sue on unrelated grounds. *See Vidal v. South American Securities Co.*, 276 F. 855 (2d Cir.1921) (citing former § 118). The federal *in rem* statute has been held to extend only to pre-existing claims and cannot be used to assert liens for the first time. *Id.;* 14 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure,*

§ 3634, at 54. Similarly, courts considering implied waiver under the FSIA have expanded waiver only to the extent necessary to consider factually and legally related causes of action. *See, e.g., Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193 (2d Cir.), *cert. denied*, 527 U.S. 1022, 119 S.Ct. 2368, 144 L.Ed.2d 772 (eviction proceeding brought by foreign state lacked direct connection to false imprisonment claim thus barring implied waiver); *In re Estate of Ferdinand Marcos Human Rights Litigation*, 94 F.3d 539 (9th Cir. 1996) (Philippine action seeking recovery of public assets was not implied waiver for human rights violation action); *Gates v. Victor Fine Foods*, 54 F.3d 1457 (9th Cir.), *cert. denied*, 516 U.S. 869, 116 S.Ct. 187, 133 L.Ed.2d 124 (1995) (refusing to expand waiver to encompass unrelated action); *Kramer v. Boeing Co.*, 705 F.Supp. 1392 (D.C.Minn.1989) (waiver for contract dispute did not extend waiver to tort action)

In fact, pursuant to 28 U.S.C. § 1655, where a defendant does not voluntarily appear, "the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the defendant without appearance, affect only the property which is the subject of the action." Thus, if the Court permitted Vietnam to limit its waiver as Vietnam suggests, it would have effectively failed to appear. In such a case, the Court would nevertheless be enabled to determine title under 28 U.S.C. § 1655 and would necessarily award the funds to the Reinsurers, the only parties appearing. *See id.* In order to avoid this nonsensical result, the Court must construe Vietnam's waiver as broad enough to clear the "cloud upon the title" to the personal property within this district. *See Canadian Overseas* at 278; 28 U.S.C. § 1655.

Thus by its appearance and claim to the funds, Vietnam has impliedly waived its immunity to the extent necessary to determine all pre-existing claims relating to legal title to the property arising out of the 1971 accident. Only the contract claim meets this limited waiver under both *in rem* and FSIA waiver and counterclaim analysis. To the extent the Reinsurers seek recovery beyond the property within this jurisdiction or recovery under theories of dissolution or expropriation, neither waiver or counterclaim exceptions apply to grant jurisdiction.

### 3. *Additional Asserted Exceptions*

The Reinsurers also argue that this Court has jurisdiction over their claims under either commercial activities or expropriation exceptions to the FSIA. Although the Reinsurers' claims are otherwise time-barred, *see infra*, both exceptions are nevertheless inapplicable to the Reinsurers' dissolution and expropriation claims.

### a. Commercial Activities

■ The commercial activities exception of the FSIA provides that a foreign state is not immune from the jurisdiction of federal courts in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2), "[T]he commercial character of an act is to be determined by reference to its 'nature' rather than its 'purpose'." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). Furthermore, "the issue is whether the particular actions that the foreign state performs (whatever motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* (citing Black's Law Dictionary 270 (6th ed.1990)).

The Reinsurers argue that the former Republic's earlier prosecution and settlement of the commercial subrogation action in 1973 creates a commercial activity exception to sovereign immunity. Again, the Reinsurers carry this argument too far. While initiation and settlement of commercial litigation may be a "commercial activity" within the meaning of the statute, *see Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Co.*, No. 90 Civ. 4169, 1993 WL 541236, at 7 (S.D.N.Y.1993), the Reinsurers have failed to demonstrate how their current claims are "based upon" the 1973 litigation. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993) (plaintiff has burden of showing that immunity would not be granted).

The 1973 litigation sought damages for destruction of rice cargo after an accident allegedly cause by third parties. An action is "based upon" commercial activity within the United States when the commercial activity is a necessary element of Plaintiff's claim or depends in some way on the alleged commercial activity. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 357, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). *See also Transatlantic Shiffahrtskontor v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir.2000) ("What does 'based upon' mean? At a minimum, that language implies a causal relationship.").

The Reinsurers need not prove that Vietnam participated in the commercial activity of settling a subrogation action in the United States to prove their claims. Nor did the subrogation settlement cause their claims to arise. Rather, their claims arise from alleged contractual agreements between SOVAR and the reinsurers, ownership interests frustrated by the dissolution of SOVAR; and an alleged expropriation of SOVAR by Vietnam. Thus, even if the Court were to impute the commercial activity of the former Republic to Vietnam, the Reinsurers' claims to the money are

not based upon Vietnam's commercial activity, making the exception of 28 U.S.C. § 1605(a)(2) inapplicable.

### b. Expropriation Exception

Finally, the Reinsurers argue that the expropriation exception to foreign sovereign immunity is applicable to their expropriation claim. Under the expropriation exception, a foreign entity is not immune from a suit wherein:

> rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3).

■ "[I]n order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir.2000). To establish the necessary jurisdictional nexus with the United States, the property must "either (a) be present in the United States in connection with a commercial activity carried on in the United States by the foreign

state, or (b) be owned or operated by an agency or instrumentality of the foreign state that is engaged in a commercial activity in the United States." *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1395 (5th Cir.1985).

■ The Reinsurers claim here is fatally flawed. Property taken within the meaning of the statute means "physical property" not the right to receive payment. *Hirsh v. State of Israel*, 962 F.Supp. 377, 383 (S.D.N.Y.1997) (citing *Canadian Overseas Ores Ltd. v. Compania de Acero*, 528 F.Supp. 1337 (S.D.N.Y.1982) (holding that contractual rights to payment, absent an expropriation of real property, do not constitute "property" within the meaning of the FSIA)). *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*, cited by the Reinsurers, is not to the contrary. 616 F.Supp. 660 (D.C.Mich.1985). In *Kalamazoo*, the court found that a majority stock interest, which gave control over the physical assets of the company, fell within the exception, but did not find that less than majority interest, as alleged here, would trigger expropriation jurisdiction.[7] *Id.* at 663.

Further, the plain language of the statute presents several obstacles to its application on these facts. The Reinsurers can point to no property in the United States taken in violation of international law—the funds in the United States have remained in a bank account here for twenty-five years. Nor is the property allegedly taken in violation of international law present in conjunction with a commercial activity con-

---

**7.** The *Kalamazoo* court did note, however, that under United States law, a shareholder does hold a direct right to the assets of a corporation upon dissolution. 616 F.Supp. at 663. Here, SOVAR is alleged to have been dissolved, thus raising the question of whether Swiss Re, as a shareholder in a dissolved corporation, enjoys rights to physical assets protected under the expropriation exception. However, the Reinsurers have not raised this argument or presented the Court with applicable Vietnamese corporate law. Further, the Court does not intend to rule on this question as the expropriation exception is otherwise inapplicable and the expropriation claim is clearly time-barred, *see infra*.

ducted by Vietnam or owned or operated by a foreign state engaged in commercial activity in the United States. Consequently, the expropriation exception is inapplicable on these facts.

Finally, as the Court lacks jurisdiction over the Reinsurers' second and third claims, both under the FSIA and because they are time-barred, *see infra*, it is unnecessary to consider the Act of State doctrine issues such claims might trigger. *See de Sanchez v. Banco Central de Nicar.*, 770 F.2d 1385, 1389 (5th Cir.1985) (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 421–23, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)) (the Act of State doctrine requires "that a court, *after exercising jurisdiction*, decline to review certain issues, in particular, the validity or propriety of foreign acts of state.") (emphasis added).

### B. Statute of Limitations

#### 1. *Applicable Law*

 The FSIA does not provide for a federal substantive law rule of decision but operates merely as a "pass-through" to state law principles. *See Pescatore v. Pan Am. World Airways*, 97 F.3d 1, 12 (2d Cir.1996). Thus, the Court will apply New York choice of law rules. New York's choice of law rules require application of the law of the forum with the greatest interest. *Neumeier v. Kuehner*, 31 N.Y.2d 121, 127, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). New York requires that a foreign statute of limitations, if shorter than the New York statute, must be applied where a cause of action accrues outside of New York. *Besser v. E.R. Squibb & Sons*, 146 A.D.2d 107, 539 N.Y.S.2d 734 (1st Dep't 1989). Here, however, the parties agree that New York statutes of limitations apply and neither has raised alternate foreign limitations periods. Accordingly, in light of the parties' agreement, New York's interest in property held within this state, and the absence of conflicting law, the Court will apply the New York statute of limitations. *See Schmidt v. Polish People's Republic*, 742 F.2d 67, 70 (2d Cir. 1984) (affirming application of New York statute of limitations upon parties' agreement under FSIA jurisdiction).

The Court would reach the same result under federal common law conflict principles or under its *in rem* jurisdiction. *See Pescatore*, 97 F.3d at 14–15; *Union Camp Corp. v. Dyal*, 460 F.2d 678 (5th Cir.1972) (applying choice of law rules of situs of the property under federal *in rem* jurisdiction).

The instant action raises challenging and novel statute of limitations questions. The parties agree that New York's six-year statute of limitations applies to each of the Reinsurers' three claims. NY CPLR § 213. The parties' dispute centers upon when each cause of action accrued and whether the limitations period was tolled during the war and/or while the assets were frozen.

 "While the question of when a cause of action accrues often proves to be difficult in particular applications, it is governed, in theory, by a simple principle: 'A cause of action does not accrue until its enforcement becomes possible.'" *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359, 362–63 (2nd Dep't 1989) (quoting *Jacobus v. Colgate*, 217 N.Y. 235, 245, 111 N.E. 837 (N.Y.1916)). In other words, a "cause of action accrues, for the purpose of measuring the period of limitations, when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court". *Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 221, 652 N.Y.S.2d 584, 674 N.E.2d 1349 (N.Y.1996) (internal quotations and citations omitted). "It would seem to be a logical corollary to this rule

that the Statute of Limitations may not begin to run before all the elements of a cause of action may truthfully be alleged, nor may it continue to run for any period of time during which an element of the cause of action can no longer be truthfully alleged." *Roldan,* 544 at 363.

### 2. *Accrual*

#### a. Contractual Reimbursement Claim

° ▇▇ The Reinsurers' first claim is based on SOVAR's alleged contractual duty to reimburse the Reinsurers out of the settlement monies.[8] According to the Reinsurers, the contract entitled the Reinsurers to receive 33.23% of any settlement received by SOVAR. Reinsurers' Compl. ¶ 21. A reinsured is bound to account *pro tanto* to its reinsurer for any recovery it receives. *See Couch on Insurance 2d* (Rev ed) § 61:15. *See also Hamilton Fire Ins. Co. v. Greger,* 246 N.Y. 162, 158 N.E. 60 (1927) (creating an equitable promise to repay insurer's indemnity payments where party who caused damages also compensated the injured party); *Maryland Cas. Co. v. City of Cincinnati,* 291 F. 825, 828 (S.D.Ohio 1923) (requiring reinsured to recoup indemnity it received from reinsurer on contract and equity theories). Effectively, this is a cause of action for equitable or contractual reimbursement under the

maxim that "no one should be enriched by another's loss." *See Couch* § 61:20. Put another way, whether by express contract or implied in equity, a reinsurer who has been compelled to pay under a policy ought to be reimbursed when its reinsured is paid by the party whose fault caused the damages. *See generally* 71 *NY Jur. 2d, Insurance* § 2173 (citing *Federal Ins. Co. v. Arthur Andersen & Co.,* 75 N.Y.2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870 (N.Y. 1990)).

▇▇ A cause of action for reimbursement does not accrue until a payment constituting a "double recovery" is made.[9] *See Aetna Life and Cas. Co. v. Nelson,* 67 N.Y.2d 169, 501 N.Y.S.2d 313, 492 N.E.2d 386 (N.Y.1986) (interpreting N.Y. Insurance Law § 673(2) [now § 5104(b) ] ). Lord Day, acting as an agent for Vietnam and SOVAR,[10] received the settlement funds shortly after April 17, 1975 when the check was issued. Thus, SOVAR was in constructive receipt of the settlement funds as of April 1975.[11] *See Lawyers' Fund v. Gateway State Bank,* 239 A.D.2d 826, 658 N.Y.S.2d 705, 707 (3rd Dept.1997) ("The key to determining whether the payee has obtained possession is whether the transferor placed the instrument out of its control by, for example, delivering it to the

---

**8.** The Court notes that the reinsurance contract has never been produced but the Court assumes that it does exist for purposes of this motion to dismiss.

**9.** The Reinsurers misconstrue the cause of action as one requiring a substantive demand in an effort to apply *Continental Cas. Co. v. Stronghold Ins. Co.,* 866 F.Supp. 143, 145 (S.D.N.Y.1994), *aff'd,* 77 F.3d 16 (2d Cir. 1996). This is disingenuous. Unlike the facts of *Continental,* SOVAR was not a reinsurer of the Reinsurers, thus the Reinsurers had no substantive duty to make a demand upon SOVAR or Vietnam in order to accrue the cause of action. To the extent it was necessary for the Reinsurers to make a procedural demand prior to bringing suit, the limitation period

began to run when the "right to make the demand [was] complete", thus a procedural demand requirement would not effect the accrual calculation. *Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1161 (2d Cir.1982) (citations omitted).

**10.** *see* discussion *supra* at footnote 5.

**11.** In May 1975, the Panama Canal Company stopped payment on the settlement check, presumably due to the government's ban on transfers to Vietnam. Interpleader Compl. ¶ 7. Ultimately, in November 1975, Lord Day secured a license from the OFAC and the check was reissued. *Id.* at ¶ 8; Curran Ltr., Ex. C at 5.

payee's agent") (citations omitted); 80 *NY Jur.2d,* § 272 (discussing constructive delivery). *See also* Interpleader Compl. ¶ 5 ("Lord Day had planned to transfer the settlement funds to SOVAR because upon information and belief, SOVAR was subrogated to all the rights of the Republic of Vietnam."). Lord Day's receipt of the settlement payment thus created a "double recovery" for SOVAR (having received payment from both the Reinsurers and the Panama Canal Company).[12] The Reinsurers suffered harm and had a right to reimbursement from that date forward as all of the elements to state a claim for reimbursement had accrued by April 1975.

b. Dissolution Claim

The Reinsurers' second claim seeks recovery on the theory that they are the remaining shareholders of SOVAR and are thus "entitled to a distribution of the balance of the fund (after payment of the reinsurer's claims under the First Claim for relief herein) based on the respective percentages of their shareholdings in the former SOVAR." Reinsurer Compl. ¶ 27.

■ The Court construes this claim as an action for dissolution or an accounting. Such a cause of action accrues when the corporation ceases to operate, *Van Suetendael v. Van Suetendael,* 293 N.Y. 233, 235, 56 N.E.2d 563 (N.Y.1944) and is governed by a six-year statute of limitations (CPLR § 213). *Bernstein v. La Rue,* 120 A.D.2d 476, 501 N.Y.S.2d 896, 898 (2d Dep't 1986). Thus, the Reinsurers' second cause of action accrued when SOVAR was dissolved and discontinued by the Socialist Republic

of Vietnam in April 1975. Reinsurer Compl. ¶ 24.

c. Expropriation Claim

■ The parties agree that the Reinsurers' expropriation claim accrued in 1975 when their ownership rights in SOVAR were allegedly confiscated. Reinsurer Mem. Law at 21. Expropriation is governed by a six-year statute of limitations. NY CPLR § 213.

In sum, all three of the Reinsurers' claims accrued in April 1975 and are governed by a six-year statute of limitations. Thus, each of these three claims must have been brought no later than April 1981 absent an applicable tolling provision.

3. *Tolling*

a. War

■ The Reinsurers argue that as each of their claims is against a country with which the United States was at war, the statute of limitations was tolled pursuant to N.Y. CPLR § 209 during hostilities with Vietnam. New York's war tolling provision § 209(a) provides:

[w]here a cause of action, whether originally accrued in favor of a resident or non-resident of the state, accrued in a foreign country with which the United States or any of its allies were then or subsequently at war, or territory then or subsequently occupied by the government of such foreign country, the time which elapsed between the commencement of the war, or of such occupation,

---

**12.** In the absence of an effective subrogation agreement between SOVAR and Vietnam, Vietnam was also in constructive receipt of a "double recovery" (one payment from SOVAR and a second from the Panama Canal Company) under the same theory. Although no privity existed between the Reinsurers and Vietnam, preventing an express contractual recovery under the reinsurance contract, *see*

*Reliance Ins. Co. v. Aerodyne Engineers Inc.,* 204 A.D.2d 944, 612 N.Y.S.2d 87 (3d Dep't 1994) (citing *Pink v. American Surety Co. of New York,* 283 N.Y. 290, 28 N.E.2d 842 (1940)), an equitable claim for reimbursement or "legal" subrogation directly against Vietnam also accrued in favor of the Reinsurers. *See* 23 *NY Jur.2d,* § 25.

and the termination of hostilities with such country, or of such occupation, is not a part of the time within which the action must be commenced.

CPLR § 209(a).[13] Tolling is triggered when the occupation begins even where the United States or its allies are not yet at war with the occupying country. *Gruss v. Nettel,* 200 Misc. 174, 176, 104 N.Y.S.2d 329 (N.Y.Sup.Ct.1951). Further, CPLR § 209(b) tolls the statute of limitations:

> [w]here a person is unable to commence an action in the courts of the state because any party is an alien subject or citizen of a foreign country at war with the United States or any of its allies, whether the cause of action accrued during or prior to the war, the time which elapsed between the commencement of the war and the termination of hostilities with such country is not a part of the time within which the action must be commenced.

CPLR § 209(b). Thus, assuming *arguendo* that either of the tolling provision applies, the statute of limitations was tolled from April 1975 until hostilities with Vietnam ended.

 The Reinsurers assert that "hostilities," within the meaning of the statute, did not terminate until 1995 when the United States normalized relations with Vietnam and unblocked Vietnamese assets frozen in this country. Thus, they argue, the statute of limitations only began to run when the United States normalized diplomatic relations with Vietnam in 1995. This is an untenable result.

In support of their tolling argument, the Reinsurers point to *Sakin v. London, New York Shanghai Trading Corp,* in which the New York Appellate Division, First Department, tolled the statute of limitations where a plaintiff was disabled from bringing suit pursuant to TWEA provisions, as the Reinsurers allege they too were disabled, *see infra.* 277 A.D. 977 (1st Dep't 1950). However, *Sakin* addresses to whom the tolling provisions apply but says nothing about the terminal date operable under CPLR § 209, the issue before this Court. *Id.* Thus, assuming the Reinsurers' were disabled under the meaning of 209(b) pursuant to *Sakin,* the inquiry does not end there.

While the United States reached a settlement of property claims and normalized diplomatic relations with Vietnam in 1995, military conflict between the two countries had long since ended.[14] Absent a clear indication that the Legislature intended the term "hostilities" to encompass both diplomatic hostilities as well as military, the Court will not so interpret the statute. *See Hernandez v. Barrios–Paoli,* 93 N.Y.2d 781, 698 N.Y.S.2d 590, 720 N.E.2d 866 (1999) (court's role is to carry out the purpose of the statute as embodied in the words chosen by the Legislature).

CPLR § 209(a) tolls the statute of limitations "between the commencement of the war, or such occupation, and the termination of hostilities with such country, or of such occupation." CPLR § 209(b) contains nearly identical language. The New York Legislature amended CPLR § 209 (formerly §§ 13, 27 and 28–a) in 1949 to

---

**13.** It is unnecessary to decide whether each cause of action did, in fact, arise in Vietnam as this argument otherwise fails under both N.Y. CPLR 209(a) and 209(b).

**14.** *See* App. Vietnam's Mot., Ex. C (*Agreement Between the Government of the United States and the Government of the Socialist Republic of Vietnam Concerning the Settlement of Certain Property Claims,* 34 I.L.M. 685 (Jan. 28, 1995)), Ex. D (*Foreign Assets Control Regulations: Unblocking of Vietnamese Assets,* 60 Fed.Reg. 13885 (Mar. 9, 1995)), Ex. E (*Remarks by the President in Announcement of Normalization of Diplomatic Relations with Vietnam* (July 11, 1995)).

make clear that a treaty of peace was unnecessary to establish a terminal date ending the tolling period and found that the "termination of hostilities with such country" would suffice. *N.Y. Law Rev. Comm'n Rep.* 769, 795–96 (1949) (cited in 1 *New York Civil Practice: CPLR Articles 1–2* § 209.01 (June 2000)). Prior to the 1949 amendment, the tolling provision extended throughout "the period during which such foreign country was at war with the United States or any of its allies, or during which such territory was so occupied". *N.Y. Law Rev. Comm'n Rep.* 769, at 771. The Legislature's action sought to avoid operation of the tolling provision until "ratification of the peace treaty or the proclamation of peace" because this could lead to operation of the tolling provision "indefinitely." *Id.* at 796, 698 N.Y.S.2d 590, 720 N.E.2d 866. Instead, although the amendment could "effect a shortening of the time allowed for commencing suit," *id.* at 791, 698 N.Y.S.2d 590, 720 N.E.2d 866, the Legislature determined to alter the terminal date so that "the statute of limitations should not be unduly extended". *Id.* at 775, 698 N.Y.S.2d 590, 720 N.E.2d 866. Accordingly, the Court will not interpret the statute to lengthen effectively the duration of the tolling period.

Every court to consider this argument has reached the same conclusion. *See, e.g., Tran v. Citibank,* 586 F.Supp. 203, 206 n. 1 (S.D.N.Y.1983) ("§ 209(a) does not contemplate the ultimate triumph of a government which the United States recognizes, with a concomitant indefinite suspension of the statute of limitations."); *Bao v. Bank of America,* 1986 WL 1807, at *3–*4 (S.D.N.Y.1986) (citing *Tran* and adding that the parties had failed to "convince the Court that a remnant of the Army of the Republic of Vietnam or other 'friendly' groups exist which desire to overthrow the 'occupying' hostile Socialist Republic of Vietnam government").

Thus, to the extent CPLR 209(a) or (b) applies, its tolling provisions ceased to operate upon the termination of military conflict with Vietnam. The Reinsurers' Complaint was filed in 1997, which was clearly more than six years after the termination of such hostilities. *See, e.g., Tran* (rejecting similar tolling argument for claim filed in 1983); *Bao* (same for claim filed in 1986).

### b. Equitable Tolling

The Court construes the Reinsurers' remaining tolling argument, justifying their failure to bring suit from the end of military hostilities with Vietnam until 1997, as an equitable tolling argument based upon their alleged disability under the Trading With the Enemy Act prior to the unblocking of assets in 1995. The Reinsurers assert that they had no tribunal in which to bring their claim as the funds sought were frozen. *See, e.g., Sakin,* 277 A.D. 977, 100 N.Y.S.2d 178 (tolling statute of limitations where plaintiff disabled from bringing suit per TWEA). Relying on this alleged disability, the Reinsurers seek relief from the statute of limitations. This argument must fail because the Reinsurers have failed to establish their disability. Further, even if a disability could be established, the Court lacks the authority to extend the war tolling provision and the Reinsurers have otherwise failed to act with the diligence necessary to trigger equitable tolling.

### (i) Disability

Under New York law, "limitations are suspended when there is no tribunal competent to adjudge." *Oswego v. State,* 226 N.Y. 351, 362, 124 N.E. 8 (N.Y. 1919) (citing *Parmenter v. State of N. Y.,* 135 N.Y. 154, 163, 31 N.E. 1035 (1892)). *See also Jacobus v. Colgate,* 217 N.Y. 235, 111 N.E. 837 (N.Y.1916) (same) (citations

omitted). Indeed, "it would [be] absurd to hold there was a statute of limitations within which a claim must be sued, when there [was no] court or tribunal before which the [defendant] could be summoned to answer the suit." *Parmenter*, 135 N.Y. 154 at 163, 31 N.E. 1035 (citations omitted). However, the Reinsurers have not established that they were barred from pressing their claim either in the United States or abroad prior to 1995, thus this tolling argument must also fail.

Despite their assertion to the contrary, the Reinsurers were not clearly barred from bringing suit in the United States prior to 1995 when the assets were unfrozen. The Trading With the Enemy Act ("TWEA") provides an exclusive remedy for recovery of blocked assets. *See* 50 U.S.C.App. § 9(a). *See also Bank Voor Handel en Scheepvaart, N.V. v. Kennedy*, 288 F.2d 375 (D.C.Cir.), *cert. denied*, 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961). Under the TWEA provisions, a party may petition the Alien Property Custodian to unblock assets for debts owing which arose out of the property seized. 50 U.S.C.App. § 9(a). *See also* 78 *Am Jur.2d War* § 66, et seq. (2000). These provisions permit friendly alien corporations, *inter alia*, to collect on claims, *Kaufman v. Societe Internationale Pour Participations Industrielles et Commerciales*, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853 (1952), which existed prior to the freezing of the asset, *see Stasi v. Markham*, 69 F.Supp. 163, 165 (D.N.J.1946); *Wilson v. Miller*, (E.D.N.Y.1921), provided that the claimant's government gives reciprocal rights to American citizens in similar circumstances. 50 U.S.C.App. § 9(e).

However, enemies and enemy allies, including foreign corporations conducting business in an enemy country, are expressly excluded from the provisions. *See Swiss Nat'l Ins. Co. v. Miller*, 267 U.S. 42, 43, 45 S.Ct. 213, 69 L.Ed. 504 (1925) (citing

50 U.S.C.App. § 2). Thus, factual questions remain as to the Reinsurers' wartime status and the relevant reciprocity provisions. However, it is clear that depending on the Reinsurers' status, a remedy may have been available to them prior to 1995. Nothing in the record indicates that the Reinsurers were aware of or pursued these remedies.

Finally, the Reinsurers have failed to make any explanation for their failure to pursue their claims internationally. All three of the Reinsurers' claims allege purely economic injuries, which arose in their places of residence, *see Quinn v. Thomas H. Lee Co.*, 61 F.Supp.2d 13 (S.D.N.Y.1999) (citing *Block v. First Blood Assoc.*, 988 F.2d 344, 349 (2d Cir.1993)) (applying New York's borrowing rule for statute of limitations inquiry), or in Vietnam where the events occurred. As addressed above, only the contract claim holds even a tangential relation to this forum. Thus, the Reinsurers have failed to persuade the Court that they were clearly barred from filing suit here or abroad prior to 1995.

(ii) Statutory Authority

█ Even assuming the Reinsurers were disabled from bringing suit until 1995, a fact not established on the record before this Court, their argument for equitable tolling would fail. Equitable tolling may be necessary to "avoid inequitable circumstances" and may be applied "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v.. United States I.N.S.*, 232 F.3d 124, 129 (2d Cir.2000) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996)) (internal quotations omitted).

However, "[n]ot all time limitations are subject to equitable tolling." *Iavorski*, 232 F.3d at 129. Applying a state statute of

limitations, the Second Circuit recently re-iterated the New York rule that

> time limitations created by statute are not tolled in the absence of statutory authority. Courts may only 'construe provisions made by the Legislature creating exceptions or interruptions to the running of the time limited by statute....' They may not themselves create such exceptions.

*Schermerhorn v. Metropolitan Trans. Auth.,* 156 F.3d 351, 354 (2d Cir.1998) (quoting *King v. Chmielewski,* 76 N.Y.2d 182, 187, 556 N.Y.S.2d 996, 556 N.E.2d 435 (N.Y.1990)). The Reinsurers point to N.Y. CPLR § 209 for statutory tolling authority. Having rejected application of the war exception on these facts, the Court must only conclude that the action is time-barred.

### (iii) Diligence

 Equitable tolling may be nevertheless appropriate where a plaintiff has "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam). Here, the Reinsurers have not demonstrated any diligent efforts to press their claim over a twenty year period. They offer no explanation for this lapse and appear to have made no effort to file or even give notice of their claim through the Alien Property Custodian in the United States, in Vietnam, or in any international tribunal. Accordingly, diligence cannot be imputed to justify equitable tolling.

Therefore, even if the Reinsurers' were precluded from pursuing their twenty year-old claims under the TWEA provisions, each of their claims is now time-barred. As Judge Edelstein concluded in *Drews v. Eastern Sausage & Provision Co.,* although this result may seem harsh or unfair, the Reinsurers' claims are perhaps best viewed as a "casualty of war." 125 F.Supp. 289, 292 (S.D.N.Y.1954) (re-jecting the applicability of CPLR § 27 [now § 209(b)] as tolling shareholder derivative claims despite the "no doubt harsh" result).

### C. Vietnam's Executive Agreement With The United States

 The Court notes, however, that had the claims been timely, Vietnam's Executive Agreement argument would fail. Vietnam asserts that an Executive Agreement controls resolution of this action in favor of Vietnam. In the process of normalizing relations with Vietnam in 1995, the United States agreed to lift the block on the former Republic's assets held in the United States. *See Agreement Between the Government of the United States of America and the Government of the Socialist Republic of Vietnam Concerning the Settlement of Certain Property Claims,* Jan. 28, 1995, U.S.-Vietnam, 34 I.L.M. 685 ("Executive Agreement"). The Executive Agreement settled "(a) the claims of the United States and of nationals of the United States (including natural and juridical persons) against Vietnam ..." and "(b) the claims of Vietnam and of nationals of Vietnam (including natural and juridical persons) against the United States arising from the nationalization, expropriation, or taking of, or other measures directed against, properties, rights, and interests" held in either country. *Executive Agreement,* art. 1, 34 I.L.M. at 686. In exchange for the settlement of the above claims, Vietnam agreed to pay the United States over $208.5 million "out of" the blocked assets after which the United States would "unblock all assets of Vietnam". *Executive Agreement,* art. 2, ¶¶ 1,3, 34 I.L.M. at 687. According to its terms, the Agreement was made "in the context of the process of normalization of relations between the United States and Vietnam on the basis of equality and mutual benefit." *Id.* at 686.

Because the Executive Agreement unblocked the assets of Vietnam, in exchange for a settlement amount to be taken "out of" the blocked funds, 34 I.L.M. 685 at 687, Vietnam argues that implicit in this arrangement was a recognition that Vietnam is the successor to the former Republic of South Vietnam and has succeeded to title of the blocked assets. *See* Vietnam Mem. Law at 10 (citing Brief for Defendant–Appellee United States in *To v. Rubin*, No. 95 Civ. 6068, 1995 WL 723130 at 9 (2d Cir. Aug.21, 1995)). *See also To v. Rubin*, 99 F.3d 400, 1995 WL 723130, at *3 (2d Cir. Dec. 6, 1995) (dismissing as moot claim to unfrozen assets by South Vietnamese and citing favorably to the United States Government brief, *supra*), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1880, 135 L.Ed.2d 176 (1996); *To v. Bank of New York*, 101 F.3d 681, 1996 WL 146517, at *2 (2d Cir. Apr. 1, 1996) (acknowledging Vietnam as succeeding to the frozen assets).[15] Thus, Vietnam argues that the Executive Agreement makes determination here a non-justiciable question by requiring all assets of the former Republic to be transferred to Vietnam. Vietnam Mem. Law at 4 (citing *Can v. United States*, 14 F.3d 160, 164 (2d Cir.1994)). However, this argument begs the question because it assumes that the assets were properly vested in the former Republic.

Unlike *Can* and the other cases cited by Vietnam on this point, a creditor's dispute as to title of the once frozen funds does not rise to the level of a political question. *Can* addressed the rights of South Vietnamese nationals who claimed ownership of the frozen assets of the collapsed South Vietnamese government on the theory that the former South Vietnamese nationals were the only remaining representatives of the fallen government and were therefore entitled to the former country's assets. The Second Circuit rightly declined jurisdiction finding that such a decision would involve an "initial policy determination of a kind clearly for nonjudicial discretion" as the Court would be required to determine the question of government succession and recognition. *Id.* at 164 (quoting *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

Here, there is no political question raised in addressing the conflict between the parties. The question before the Court is not whether the assets of the former Republic now rightfully belong to Vietnam, as in *Can*. Rather, the questions presented are 1) whether the title to the funds was ever rightfully vested in the former Republic and 2) whether Vietnam, now standing in the shoes of the former Republic, must honor the contractual and other rights of the former Republic's creditors. Thus, the Executive Agreement, which only disposes of assets clearly vested in the former Republic, does not settle the issue. Nevertheless, the Court must award the funds to Vietnam as the Reinsurers' claims are time-barred.

## D. Vietnam's Claim to the Funds

■ Absent any cognizable competing claims and considering that the prior bank account was directed to be held for the benefit of "The Republic of Viet-nam and Tong Tuoc Tiep Te," *see In re: Chinese Maritime Trus, Ltd.*, 71 Civ. 161(RLC) (S.D.N.Y. Mar. 1976) (Order), the funds vested to the former Republic for purposes of this motion. As the Executive Agreement operates to vest the funds of the former Republic to Vietnam, the funds shall pass to Vietnam. Vietnam is directed

---

**15.** The Court in no way relies upon the Second Circuit Court of Appeals unpublished opinions for any precedential value.

to submit a proposed Order effecting this Opinion.

### III. CONCLUSION

Defendant Vietnam's motion to dismiss is GRANTED in its entirety. The Cross–Complaint of Defendants Swiss Reinsurance Company, Assurance Generales de France, and Groupe des Mutuelles Alsaciennes is hereby DISMISSED. As a matter of law, the Socialist Republic of Vietnam is the exclusive and rightful owner of the funds and is entitled to relief.

SO ORDERED.